437 P.2d 708

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Wilton S. SIMIEN, Defendant-Appellant.**

**No. 8351.**

Supreme Court of New Mexico.

Feb. 19, 1968.

Beavers & Caton, Farmington, for appellant.

Boston E. Witt, Atty. Gen., James V. Noble, Edward R. Pearson, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

CHAVEZ, Chief Justice.

Defendant-appellant Wilton S. Simien attacked by motion under Rule 93 (§ 21–1–1 (93), N.M.S.A., 1953 Comp.), the judgment and sentence imposed upon him in 1965 by the District Court of San Juan County. After a hearing, at which appellant and others testified concerning the crime of which appellant had been convicted, appellant's arrest, interrogation and guilty plea, appellant's motion was denied and appeal from the denial was taken.

Under appellant's Rule 93 motion, three points were raised under which appellant alleged that he was arrested without a warrant and his car illegally searched without a search warrant; that, during the course of police interrogation, he was not advised of his right to counsel, did not have effective counsel and was not allowed to obtain counsel; and that he was made by the police to give evidence against himself without effective aid of counsel and without other help of any kind. At the hearing on appellant's motion, in addition to presenting

evidence concerning these allegations, appellant presented evidence which he contends demonstrated unfair dealing by the police amounting to solicitation and entrapment which alleged unfair dealing deprived appellant of due process of law. Appellant's requested findings of fact and conclusions of law were denied. Appellant raises five points on appeal.

We first consider appellant's points III and V together, which are as follows:

"THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLANT WAS DENIED THE RIGHT TO ASSISTANCE OF COUNSEL AT A CRITICAL STAGE OF HIS TRIAL."

"THE TRIAL COURT ERRED IN FAILING TO FIND AND CONCLUDE THAT THE DEFENDANT DID NOT VOLUNTARILY, INTELLIGENTLY OR KNOWINGLY PLEAD GUILTY."

With regard to appellant's right to counsel and his plea, the trial court made the following findings of fact which are not attacked:

"2. On the 27th day of October, 1964 the Defendant was arraigned before the Justice of the Peace Precinct 18 of San Juan County New Mexico at which time he was advised of the charge against him and of his right to counsel and the Defendant having expressed a desire for counsel but being unable to retain one personally the District Court of San Juan County New Mexico was requested to appoint a counsel for the Defendant. The District Court appointed Stephen Grover, a licensed practicing attorney in the State of New Mexico, to represent the Defendant.

"3. On October 30, 1964 a preliminary hearing was held before the Justice of the Peace Court Precinct 18 San Juan County New Mexico at which time the Defendant appeared in person and by his attorney, Stephen Grover. Following the preliminary hearing the Defendant was bound over to the District Court of San Juan County New Mexico on the charge of armed robbery.

"5. On December 2, 1964 the Defendant appeared before the District Court San Juan County New Mexico in person and while being represented by his attorney, Stephen Grover, at which time he entered a plea of guilty to the charge of armed robbery and said plea of guilty was received by the District Court."

Appellant argues that the trial court erred in not making requested findings of fact to the effect that (1) appellant was denied his right to assistance of counsel at a critical stage of the proceedings; (2) appellant was required to give evidence against himself, contrary to the New Mexico and United States Constitutions; (3) appellant was threatened with prosecution for theft and told that the Habitual Criminal Act would be imposed on him if he did not assist the police in securing the arrest and conviction of one Smith; (4) appellant was promised by police officers that he would be allowed to go free if he would assist the police in staging a crime which would allow the police to arrest and prosecute Smith; (5) appellant, as a result of the mentioned threats, did stage a robbery in which Smith was implicated; (6) that as a result of this robbery, Smith was convicted of aiding a felon to escape; (7) appellant, after his arrest for this robbery, was promised leniency by the police; (8) appellant, as a result of these promises of leniency, did not cooperate with his appointed attorney and insisted on pleading guilty; and (9) appellant's guilty plea was induced by threats and promises of leniency. Appellant also contends that it was error to deny his requested conclusions of law to the effect that (1) as a result of the denial of assistance of counsel, and for other reasons not germane to appellant's point III, appellant was denied his right to a fair and impartial trial and to due process of law, in violation of the New Mexico and United States Constitutions; (2) appellant was denied the right to counsel to his irreparable damage and prejudice, in violation

of the New Mexico and United States Constitutions; and (3) appellant did not voluntarily, knowingly and intelligently plead guilty to the charge of robbery.

The question here is whether or not there was substantial evidence to support the trial court's findings of fact and whether the trial court was correct in making conclusions of law to the effect that (1) the entire proceedings were in all respects complete and proper; (2) appellant knowingly, intelligently and voluntarily, while being advised by competent counsel, entered a plea of guilty; and (3) appellant's counsel effectively represented appellant in the proceedings.

■ The burden of proof at the Rule 93 hearing rested upon appellant to convince the court of his allegations by a preponderance of the evidence. State v. Chavez, 78 N.M. 446, 432 P.2d 411; and compare, State v. Gilbert, 78 N.M. 437, 432 P.2d 402; State v. Coates, 78 N.M. 366, 431 P.2d 744; State v. Moser, 78 N.M. 212, 430 P.2d 106. To support his contentions, appellant relies on his own testimony at the hearing on his motion under Rule 93, which testimony is in part as follows. Prior to the commission of the acts constituting the crime of which appellant was convicted, appellant came in contact with Lt. Boyce of the Farmington Police Department in connection with appellant's making a false charge, taking an amount of money and taking a television set which did not belong to him. No charges were filed in these matters. Appellant testified Lt. Boyce told him that charges could be filed but that he was not going to file charges; instead he believed he could use appellant to work with him by reporting daily to the police what certain persons known to appellant were doing. Appellant's testimony continued:

"Q. Did you actually call him every day?

"A. When I did not call he [Boyce] would come by, and I moved from over on Miller to this place over there to keep from—

"Q. At Hillcrest?

"A. —to keep him from knowing where I was.

"Q. Were you trying to get away from him at this time?

"A. Yes."

Upon appellant's failure on one occasion to help the police, appellant testified that Boyce came and got appellant.

"Q. What did he tell you?

"A. He told me I was playing on two sides of the fence, that I wasn't trying to help him, and he told this little man to go on and book him, and I talked to him and he told me I knew what I was supposed to do, and I wasn't doing it, and he gave me a chance."

Appellant testified that thereafter Boyce and Officer Tafoya planned with appellant that appellant should interest one Smith in robbing a certain cleaning establishment, which robbery was supposed to be a trap for Smith; however, appellant was unable to interest Smith in this plan.

Shortly thereafter appellant was charged with drunken driving but, according to appellant, Boyce "fixed" the ticket for him. Then appellant moved again, not telling Boyce where he had moved, but appellant stated that Boyce found out where and " * * * he come and got me and he said that was either get him or the charge would be filed tomorrow."

"Q. Get who?

"A. Smith.

"Q. What did you do then?

"A. I asked him to wait and let Smith do something and I would call the police.

"Q. Did he do that?

"A. No, he said Smith was pretty slick and he had to almost catch him in the act, so he told me I would catch Smith when he came off work and he would follow and watch me, and told me whatever I did to make sure we get at a place and when we see the police come in, we would

"Q. What was your understanding if you did not?

"A. The next day I was going to be fined with breaking and entering, burglarly [sic] and selling something that belonged to somebody else.

"Q. What did you do then?

"A. That is what we did.

"Q. Did you go see Smith?

"A. Yes, I got with him and we rode around, and brought him up to this filling station, and he said he did not want to go in, so I broke it and got in it.

"Q. Did he go in with you?

"A. No, he stayed down with his car and I took some stuff and hid it so I could put it in my car.

"Q. What was your idea?

"A. They were supposed to have been watching the car.

"Q. Were you worried about the police, when you broke into this place?

"A. No, sir.

"Q. Why not?

"A. Because I was given the 'o. k.' to do it.

"Q. You understood you could do anything you wanted to, so far as robbery was concerned?

"A. No, just as long as I could get Smith involved.

"Q. Did you actually get Smith involved?

"A. No, sir.

"Q. So you actually got somebody besides Smith involved?

"A. Yes, sir. I brought Smith back and the police and everybody was around there.

"Q. You went back and picked Smith up?

"A. Yes.

"Q. After you had disposed of the stuff you took?

"A. Yes.

"Q. And the police were not around the station?

"A. Smith said he wanted to drink some coffee until his girl friend got off from work.

"Q. What time did she get off work?

"A. Pretty late in the morning when the customers stopped coming mostly. So we went out to this place on the highway to drink coffee.

"Q. What place is that?

"A. Shamrock."

Once at the cafe, Smith went inside to drink coffee and appellant waited in the car. Appellant took a gun from the car, put it in his clothes, went into the cafe where he sat at a different table than Smith and ate some food.

"Q. Then what happened?

"A. All of a sudden, I said 'Give me the money,' and she put it on the counter and I took it and went back to the car and sat there a while.

"Q. Did you just sit in the car?

"A. Yes, sir, and Smith was still in the place, and I went around this truck to see if he was coming.

"Q. Were you hiding?

"A. No, I was wanting to get going.

"Q. Were you wanting to be stopped?

"A. I was hoping to be stopped, then I would jump out of the car."

The two drove off and when they stopped at a filling station they were taken into custody by the police. Appellant was taken immediately to the booking desk at the Farmington Police Department. He testified that, after five or ten minutes, he was confronted by Boyce who told him:

"A. * * * 'Well, for me to be able to help you, you are just going to have to go humble yourself and plead guilty and get this over with.'

"Q. Did you discuss what had happened, with Lt. Boyce?

"A. Yes, he told me I was going to tell how I did it and put it on paper.

"Q. Did he tell you you had a right to counsel at this time?

"A. No, he told me the only way he could help me was go in there and plead guilty.

"Q. Did he offer to get counsel for you?

"A. No, sir, he told me he was going to get me out, first.

"Q. Did you believe him?

"A. Yes."

When appellant was taken before a magistrate, he was informed that counsel would be appointed and a plea of not guilty was entered for him. Appellant testified that after this he was returned to Boyce's office to sign a statement. When asked if he signed the statement, appellant answered:

"A. I told him this, I said I did not mind doing [signing] it, but Judge Miles gave me this lawyer, I says the lawyer is going to be helping me, why don't you let him go along?

"* * *

"Q. But did you sign it?

"A. Yes—I don't know—yes, these other things [crimes] were in it. He said they wouldn't have meant no harm to me.

"Q. What was Lieutenant Boyce's reaction when you asked him if you shouldn't wait until Judge Miles appointed you an attorney?

"A. He had already appointed an attorney. I told him why didn't I wait until an attorney get there and he said if I go messing around with lawyers all I would do was get myself tied up in trouble.

"Q. Did you think you would?

"A. Yes, I thought I would make him mad again, he got pretty hot when I said that."

Appellant conferred with his attorney and a preliminary hearing was held, at which appellant was represented by counsel. Appellant's testimony, covering the time after preliminary hearing up through his guilty plea and judgment, is as follows:

"Q. Did you consult with Mr. Grover while you were there [in the San Juan County jail]?

"A. I called him up and told him I wanted to go ahead and plead guilty and get it over with.

"Q. How many times did you call him?

"A. Oh, about two or three times.

"Q. Why were you in such a hurry?

"A. I wanted to plead guilty and get out of jail.

"Q. Did you think you would get out by pleading guilty?

"A. As soon as I pleaded guilty I was supposed to get out and go to work.

"Q. How did you think this would help you?

"A. Well, Lieutenant Boyce said he would help me, even when Mr. Grover come over and I wanted him to hurry up and get out, because I did not want to spend too much time with these lawyers.

"Q. Did you actually spend much time with Mr. Grover?

"A. No, sir.

"* * *

"Q. Did you ask him about pleading guilty?

"A. No, he told me, 'you don't have to plead guilty, you can have a trial'— but I wanted to plead guilty and get out.

"Q. How did you feel when the Court pronounced sentence on you?

"A. I felt I had been lied to, or something like that.

"Q. Mr. Simien, do you feel that you were properly informed about your plea of guilty, about the consequences of the plea of guilty—do you feel you knew what was going to happen to you if you pleaded guilty?

"A. I felt as soon as I pleaded guilty, and everything, I would be on the street."

As to threats that the Habitual Criminal Act (Multiple Offenders Act) would be imposed on him, appellant testified:

"Q. What did you think was going to happen to you on the theft, whatever he [Lt. Boyce] was going to charge you with the TV?

"A. Well, he told me I would go to prison, and he mentioned about being an habitual criminal and I never heard that mentioned, so I asked a few guys about it, they had been in prison and they told me, 'Yes,' there was an habitual criminal."

■ Appellant does not attack the trial court's findings of fact that appellant was advised of the charge against him, of his right to counsel at his arraignment in the justice of the peace court and that appellant, while represented by counsel, entered a plea of guilty to the charge of armed robbery in the district court. These are, therefore, the facts in this court. Morris v. Merchant, 77 N.M. 411, 423 P.2d 606; Hutchison v. Boney, 72 N.M. 194, 382 P.2d 525; Latta v. Harvey, 67 N.M. 72, 352 P.2d 649. However, appellant's contention basically is that, even though these findings are taken as true, the testimony at the hearing on appellant's motion under Rule 93 shows that the police dealt with appellant in such a way that appellant did not have representation of counsel sufficient to satisfy the requirements of due process, and that appellant did not, under these circumstances, voluntarily, intelligently and knowingly plead guilty.

At appellant's arraignment in the district court, his appointed counsel stated to the court that appellant had been advised of his rights, that appellant fully understood the charges against him, and that appellant wished to enter a plea of guilty. The court then asked appellant if this was correct and if this was voluntary on appellant's part, and appellant answered in the affirmative.

Lt. Boyce's testimony, in part, is as follows:

"Q. He [appellant] had never acted as an informer for you?

"A. In that sense no, sir. He did give us information on one particular burglary.

"Q. What would that be?

"A. This was a burglary. He told us, Simien, that Smith was going to pull at the Fashion Cleaners, and he called the police."

When asked whether he had ever contacted appellant, Boyce answered "no." He stated that one of the detectives had arrested appellant in connection with the theft of a television set, but that charges were never pressed in that matter.

"Q. At this time did you ever have any conversations with Mr. Simien?

"A. I don't believe I did, if I did I don't remember it, if I talked to him the time he was up at the police station or not.

"Q. Did you ever threaten him with the charge of this TV?

"A. No, sir.

"Q. Did you ever tell him if he didn't get Cecil Smith you would press charges on that?

"A. No, sir.

"Q. At any time did you ever tell him if he would cooperate with you you would not press criminal charges on this matter?

"A. No, sir.

" *  *  *

"Q. When you staked out Fashion Cleaners, were you out there?

"A. Yes, sir, me and Sergeant Mosley.

"Q. Did you ever see Mr. Simien at the scene?

"A. No, sir.

" *  *  *

"Q. Did you ever, at any time contact this man away from your office?

" *  *  *

"A.   I don't ever remember talking to the man, I have seen him outside I am sure, several times.

"Q.   Have you ever specifically gone by his house?

"*   *   *

"A.   *   *   *   I went by with Detective Davis on an investigation."

With regard to the charge of armed robbery, on cross-examination Boyce was asked:

"Q.   Lieutenant Boyce, at any time did you advise Mr. Simien to go ahead and plead guilty in District Court and you would take care of him?

"A.   No, sir.

"Q.   At any time did you tell him if he would plead guilty you would see he got back out on the street?

"A.   No, sir.

"Q.   Did you ever make any promises of any kind to this man?

"A.   No, sir.   I certainly did not.

"Q.   Did you ever make any threats if he did not plead guilty to this charge, something would happen to him?

"A.   No, sir.

"Q.   Did you, at any time, tell him that if he held up the Shamrock Cafe that nothing would happen to him?

"A.   If he held up the Shamrock Cafe nothing would happen—no, I did not.

"Q.   Did you ever, at any time, tell him if he burglarized any place nothing would happen to him?

"A.   No, sir.

"Q.   At any time, did you try to get him to set up Cecil Smith, or anybody else?

"A.   No, sir."

The testimony of the attorney who was appointed to represent appellant prior to appellant's conviction does not add anything of substance to the testimony of appellant.   Although intended to buttress the credibility of appellant's testimony, it served principally to establish that appellant had been fully advised of his rights.

With regard to appellant's requested findings of fact Nos. 3, 4, 5, 7, 8 and 9, we are faced with a conflict in the testimony.   The district court, not this court, is the judge of the credibility of the witnesses and the weight to be given the evidence.   The district judge had the opportunity to see and hear those who testified at the hearing and was in a better position than we are to evaluate the witnesses' credibility.   Apparently the trial court believed Boyce rather than appellant.   Where, as here, there is substantial evidence to support the trial court's determination of the fact issues, that determination is conclusive on appeal.   State v. Gilbert, supra; State v. Chavez, supra; State v. Gibby, 78 N.M. 414, 432 P.2d 258; State v. Lattin, 78 N.M. 49, 428 P.2d 23; State v. Romero, 76 N.M. 449, 415 P.2d 837.   Without the support of these requested findings of fact, appellant's attack on the district court's conclusion of law, that appellant knowingly, intelligently and voluntarily, while being advised by competent counsel, entered a plea of guilty, must fail.

Appellant also claims reversible error in the district court's refusal of his requested findings of fact Nos. 1 and 2, to the effect that appellant was denied his right to counsel and was required to give evidence against himself, and appellant's requested conclusions of law Nos. 1 and 2, to the effect that appellant, as a result of the denial of his right to counsel, was denied his right to a fair and impartial trial and that he was denied his right to counsel to appellant's prejudice.   Appellant testified that he was interrogated by Lt. Boyce; that he signed a statement; that at the time he was asked for the statement; he told Boyce he wanted to wait for his lawyer, but that Boyce told him "*   *   * if I [appellant] go messing around with lawyers all I would do was get myself tied up in trouble."   Boyce testified that the

only statement made by appellant had to do with a burglary, not the armed robbery for which appellant was convicted. The defendant in State v. Archie, 78 N.M. 443, 432 P.2d 408, asserted that he did not have counsel when interrogated by and gave statements to the authorities. In that case we held that, absent a showing of prejudice, these defects were waived by a plea of guilty. See also, Christie v. Ninth Judicial District, 78 N.M. 469, 432 P.2d 825; State v. Robinson, 78 N.M. 420, 432 P.2d 264; State v. Gibby, supra. The transcript does not indicate in the instant case that appellant's statement was ever used against him. He argues that Boyce's advice to appellant not to go "messing around with lawyers" deprived appellant of the advice of his attorney and produced a plea of guilty. However, appellant admitted he was advised by his attorney that he did not have to plead guilty; that he could have a trial; that the judge was the only person who could determine whether appellant would go free or go to prison; and that he could, if convicted, receive a sentence of ten to fifty years in prison. Also, the question of whether appellant was led to plead guilty by Boyce's advice was a fact question to be decided by the trial court. When the other testimony of Boyce set out above is considered, it is clear that there is substantial evidence to support the determination of the facts made by the trial court. Therefore, appellant's requested findings of fact Nos. 1 and 2 and his requested conclusions of law Nos. 1 and 2 were properly refused by the district court, since all of appellant's contentions in this regard have to do with the period prior to appellant's knowing, intelligent and voluntary plea of guilty, and no prejudice has been shown. The district court's conclusion of law No. 3 to the effect that appellant's counsel effectively represented appellant, was proper in view of appellant's failure to successfully support his requested findings of fact.

With regard to appellant's requested finding of fact No. 6, appellant presented no evidence at the hearing which could support a finding of fact that as a result of the robbery committed by appellant one Smith was convicted of aiding a felon to escape. Thus, the district court properly refused this finding of fact.

Under points I, II and IV, appellant asserts that the trial court erred in refusing to find that appellant was illegally arrested; in refusing to conclude that appellant was denied his right to due process of law; in concluding that the entire proceedings were complete and proper; in refusing to find that law enforcement officers conducted an illegal search and seizure; in refusing to conclude that the illegal search and seizure deprived appellant of due process of law; in concluding that the proceedings were complete and proper; and in refusing to conclude that appellant was entrapped and forced by threats into committing a crime.

A complaint of illegal arrest cannot be raised upon a motion under Rule 93. State v. Hudman, 78 N.M. 370, 431 P.2d 748; and see, State v. Ramirez, 78 N.M. 418, 432 P.2d 262; State v. Gibby, supra. In State v. Williams, 78 N.M. 211, 430 P.2d 105, where the defendant entered a voluntary plea of guilty, we held that his conviction and sentence were not vulnerable to attack under Rule 93 on the ground appellant was illegally arrested, and the illegality of the arrest, even if true, was waived by the guilty plea. See also, State v. Tipton, 78 N.M. 600, 435 P.2d 430; Christie v. Ninth Judicial District, supra. Thus, appellant is precluded from attacking his conviction on the grounds of illegal arrest.

In State v. Knight, 78 N.M. 482, 432 P.2d 838, defendant contended that her automobile and the automobile of another were illegally searched at the time of her arrest. We held that, even if her contentions were true, there is no basis for relief because nothing taken in the searches was used as evidence against her. In the instant case, the record does not disclose that anything taken in any search was used against appellant. Thus, appellant could

not have been prejudiced. See also, State v. Elledge, 78 N.M. 157, 429 P.2d 355; compare, State v. Tipton, supra.

■ A claim of entrapment does not state a basis for post-conviction relief. State v. Apodaca, 78 N.M. 412, 432 P.2d 256; Anderson v. United States, (9th Cir. 1964), 338 F.2d 618; Moore v. United States, (5th Cir.1964), 334 F.2d 25; Ellison v. United States, (10th Cir.1960), 283 F.2d 489, cert. denied, 365 U.S. 885, 81 S.Ct. 1038, 6 L.Ed.2d 196. Appellant's claim, that he was entrapped and threatened into committing a crime, will not be considered by us.

The district court's conclusions of law which are subject to attack here are based upon findings of fact supported by substantial evidence.

Finding no error, the district court's denial of appellant's motion is affirmed. It is so ordered.

MOISE, J., and EDWARD E. TRIVIZ, D. J., concur.